IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01552-MEH

JOHN D. MILLER,

     Plaintiff,

v.

KÄRCHER NORTH AMERICA, INC., a Colorado Corporation,

     Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

     Before the Court is the Motion to Dismiss (ECF 22) by Defendant Kärcher North America, Inc. ("Kärcher"). The Motion to Dismiss is fully briefed. Based upon the record herein and for the reasons that follow, the Motion to Dismiss is granted.

## BACKGROUND

I.    **Allegations**

     At issue is Plaintiff's First Amended Complaint ("FAC"). The Court accepts Mr. Miller's well-pleaded allegations as true for present purposes.

     Mr. Miller worked for Kärcher, or a company that Kärcher later acquired, beginning in 2004 as a sales account manager. ECF 21 at ¶¶ 6, 10. Kärcher fired Mr. Miller one month after he refused to participate in what he believed to be illegal bid-rigging. *Id.* at ¶¶ 50, 57. Mr. Miller's termination was also one month after he was sworn in as the Prosecuting Attorney of Lapeer County, Michigan. *Id.* at ¶¶ 39, 57.

Mr. Miller alleges that Kärcher terminated him because he refused to participate in the illegal bid-rigging scheme. *Id.* at ¶¶ 50, 77. Conversely, Kärcher contends that he was discharged for having multiple jobs and underperforming at work. *Id.* at ¶ 58.

The dispute's roots go back to the late 2000s, when the Cooley Law School in Lansing, Michigan accepted Mr. Miller after several years of working at Kärcher. *See Id.* at ¶¶ 20–21. He kept his position with Kärcher throughout law school, and he took a second job as an attorney after he graduated. *Id.* at ¶ 21, 29. Over the next eleven years, Mr. Miller continued working at Kärcher while he held various roles as a private attorney. *Id.* at ¶¶ 29, 31, 33. In 2020, he ran for the position of Prosecuting Attorney for Lapeer County, Michigan and won. *Id.* at ¶¶ 36–37. He was sworn in on January 4, 2021. *Id.* at ¶ 39. Throughout his tenure at Kärcher, the company never expressed displeasure with Mr. Miller for maintaining an additional legal job or for running for prosecuting attorney. *Id.* at ¶¶ 28, 30, 38, 43.

Also in January 2021, Mr. Miller sought to sell Kärcher products to Grand Valley State University (GVSU) in Spring Lake, Michigan. *Id.* at ¶ 44. GVSU uses an open bid process for contracts. *Id.* at ¶ 45. Under this process, at least three bids must be submitted for a contract before the university will select one. *Id.* at ¶ 46. Mr. Miller's supervisor at Kärcher, Mr. Dutcher, asked him to secure two additional "courtesy bids" to satisfy GVSU's three-bid requirement. *Id.* at ¶ 47. Mr. Miller believed that Mr. Dutcher was asking him to participate in an illegal bid-rigging scheme in which he would ask other companies, who were not intending to win the GVSU job, to overbid so that Kärcher would be awarded the contract. *Id.* at ¶¶ 48–49. Mr. Miller told Mr. Dutcher that he would not seek the "courtesy bids" because he believed it was immoral and unethical. *Id.* at ¶

2

51. He also informed Mr. Dutcher that he would contact the Department of Justice ("DOJ") to ask whether the practice was illegal. *Id.* at ¶ 52.

In February, approximately one month after both the GVSU bid request and assuming the county Prosecuting Attorney role, Kärcher terminated Mr. Miller's employment. *Id.* at ¶ 57. Kärcher told him that he was fired because he was working two jobs, not meeting his performance expectations, and not giving dealers and customers his attention. *Id.* at ¶ 58. Mr. Miller contends that these are excuses and that Kärcher discharged him for not participating in a potentially illegal bid-rigging scheme. *Id.* at ¶ 52, 77.

Kärcher emphasizes in the Motion to Dismiss that Mr. Miller was a Michigan-based employee and that all alleged conduct in the pleadings occurred in Michigan. ECF 22 at 2. Mr. Miller does not dispute that assertion.

## II.      Claims for Relief

The FAC claims one cause of action against Kärcher: Wrongful Termination in Violation of Colorado Public Policy. ECF 21 at 9. Mr. Miller seeks to recover damages for lost back pay, front pay, embarrassment and humiliation, pain and suffering, harm to reputation, exemplary damages, interests, costs, attorney fees, and any other relief that this Court deems just and equitable. *Id.* at 11. He does not quantify the damages in the FAC. *Id.*

## III.     Procedural History

Mr. Miller commenced this civil action about seven months ago on June 9, 2021. The only named Defendant is Kärcher. ECF 1 at 1.

Mr. Miller amended his complaint, resulting in the FAC at ECF 21. For it, he changed his basis for subject matter jurisdiction from 28 U.S.C. § 1331 federal question to 28 U.S.C. § 1332 diversity of citizenship. *Id.* at ¶ 1 and ECF 21 at ¶ 1.

## LEGAL STANDARDS

### I.   Rule 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must exclude "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the well-pleaded averments state a plausible claim for relief, then it survives a motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The

4

nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). "The plausibility standard does not require a showing of probability that 'a defendant has acted unlawfully,' but requires more than 'a sheer possibility.'" *Parshall v. Health Food Assocs., Inc.*, No. 14-4005-JAR, 2014 WL 2547761, at *1 (D. Kan. June 5, 2014). While the Rule 12(b)(6) standard does not require that a plaintiff establish a *prima facie* case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*.

## **ANALYSIS**

The Court examines whether Mr. Miller pleads a plausible claim for relief against Defendant Kärcher in his FAC.

Mr. Miller relies on a Kärcher confidentiality agreement's choice of law provision to argue that Colorado law governs this case. ECF 23 at 3–5. He asserts that he was wrongfully discharged in violation of Colorado public policy. ECF 21 at 9–10. Kärcher counters that the confidentiality agreement was not raised in the pleadings and, even if it were, this case should be governed by Michigan law because the confidentiality agreement does not apply to this issue. ECF 24 at 2–3, 5. Kärcher further asserts that Mr. Miller failed to state a plausible claim upon which relief can be granted. ECF 22 at 12.

A federal court sitting in a diversity action must apply the choice of law rule for the state where it sits. *Cherry Creek Mortg. v. Jarboe*, No. 18-cv-00462-KLM, 2021 WL 3710360, at *3 (D. Colo. Aug. 20, 2021). Colorado's choice of law rule is consistent with the Restatement (Second) of Conflict of Laws for both contract and tort actions. *Wood Bros. Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (adopting Restatement for contract actions); *First Nat'l Bank v. Rostek*, 514 P.2d 314, 320 (Colo. 1973) (adopting Restatement for tort actions). Proper choice of law analysis in this case requires the Court to first determine whether the contract or tort section of the Restatement applies. Restatement (Second) of Conflict of Laws § 187 cmt. a (1971). Therefore, the Court begins by determining whether the confidentiality agreement's choice of law provision applies to this dispute. Finding that it does not, the Court determines that Michigan law governs this case. However, Mr. Miller brings no claim under Michigan law.

## I.    Choice of Law

Mr. Miller alleges that the parties agreed in an "employment contract" that Colorado law governs controversies between them. ECF 23 at 3. Kärcher responds that the referenced agreement

was not in the pleadings and cannot be considered by the Court. ECF 24 at 2. Even if it could, Kärcher argues that Michigan law governs this case. *Id.* at 3.

### A.  Court Can Consider the Confidentiality Agreement

"'If, on a motion under Rule 12 (b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) (quoting Fed. R. Civ. P. 12(d)). However, "a district court may consider indisputably authentic documents that are central to the plaintiff's claim and referred to in the complaint without converting the motion to one for summary judgment." *N.E.L. v. Gildner*, 780 F. App'x 567, 571 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 936, 205 L. Ed. 2d 523 (2020) (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008)). (Kärcher cites *Gee v. Pacheco* in its Reply, which references the same rule.) Furthermore, "'if a plaintiff does not incorporate by reference or attach such a document to its complaint, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.'" *Larson v. Agos*, 449 F. App'x 725, 729 (10th Cir. 2011) (quoting *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)). However, if a document is neither quoted nor referenced in the operative pleading, nor sufficiently alleged as authentic and undisputed, the document may not be considered for a Rule 12(b)(6) analysis. *See N.E.L. v. Douglas Cty., Colorado*, 740 F. App'x 920, 933 (10th Cir. 2018), *reh'g denied* (July 17, 2018), *cert. denied sub nom. N.E.L. v. Douglas Cty., Colo.*, 139 S. Ct. 1320, 203 L. Ed. 2d 564 (2019).

Mr. Miller does not include the contract containing the choice of law provision in either his FAC or in the original complaint. Instead, he attaches the agreement to his Response to the

initial Motion to Dismiss and to his Response to the operative Motion to Dismiss. ECF 18, Attachment 3 and ECF 22, Attachment 1.

Despite not including it in the pleadings, Mr. Miller presents the confidentiality agreement as dispositive of the choice of law issue, making it central to his argument. Although they dispute whether the agreement governs this controversy, neither party argues that it is invalid. Additionally, as noted, Mr. Miller previously submitted the agreement with his initial Response to the Motion to Dismiss prior to the FAC. ECF 18, Attachment 3. Therefore, Kärcher knew that Mr. Miller would rely on the agreement's choice of law provision as the basis for his argument that Colorado law governs this dispute. Thus, the Court will consider the choice of law provision in the agreement between the parties that is included in Mr. Miller's Response to the Motion to Dismiss. ECF 23, Attachment 1.

### B.  The Choice of Law Provision Does Not Apply to This Dispute

The agreement containing the choice of law provision is called "Confidentiality, Non-Solicitation and Noncompetition Agreement." By its terms, the contract "embodies the entire agreement between the Parties concerning its subject matters." ECF 23, Attachment 1 at ¶ 6. Additionally, "[a]ny dispute concerning, arising from, or relating to this Agreement shall be . . . governed by the laws of the State of Colorado." *Id.* The agreement's subject matter concerns handling confidential information, soliciting colleagues, and other similar topics.

By comparison, the issue before the Court is whether Kärcher wrongfully terminated Mr. Miller (for a reason unrelated to the terms of the confidentiality agreement). Mr. Miller alleges that Kärcher fired him because he refused to participate in an illegal bid-rigging scheme. ECF 21 at ¶ 77. Kärcher, in contrast, argues that Mr. Miller was terminated because he had two jobs and

was underperforming at work. ECF 22 at 3. Neither allegation is related to the subject matter of this confidentiality agreement.

Given that the allegations by Mr. Miller and Kärcher are outside the scope of the confidentiality agreement, its choice of law provision does not reflect a private agreement by the parties regarding which state's law applies to this dispute.

### C.  Application of Conflict of Laws Restatement Sections 6 and 145

Both parties assert that a different state's substantive law governs this case. In the absence of a choice of law agreement, courts conduct a choice of law analysis to resolve such disputes.

As noted above, the Court, applies Colorado choice of law rules (which are consistent with the Restatement (Second) of Conflict of Laws), beginning with the principles that the Restatement sets forth in § 6:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability, and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). Of these principles, § 6(c) proves most helpful. Comment f of § 6 clarifies this factor by noting that courts should apply the state law of whichever state's interest will be most deeply affected by the dispute's resolution. Restatement (Second) of Conflict of Laws § 6 cmt. f (1971). Given that all alleged conduct in this case occurred in Michigan, § 6 weighs in favor of applying Michigan law.

9

The Court does not consider Restatement § 187, which applies when parties select a choice of law. As noted above, the Court has found no such private agreement.

Instead, because this is a tort claim, the Court considers the Restatement's following guidance from § 145 regarding tort actions:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145 (1971). This section's emphasis on significant contacts further weighs in favor of applying Michigan law. The injury in this case, the termination itself, occurred in Michigan. The conduct causing the injury, whether the refusal to participate in a bid-rigging scheme or the failure to perform at work, likewise occurred in Michigan. Domicile does not favor either party given that Mr. Miller is domiciled in Michigan and Kärcher's principal place of business is in Colorado. The location where the relationship between the parties is centered also favors Michigan, because Mr. Miller is employed by Kärcher in Michigan, his clients are in Michigan, and his interactions with his superior happened in Michigan. Additionally, implicit in Mr. Miller's theory of wrongdoing is a violation of Michigan's public policy. Based on these factors, Michigan has more significant contacts in this case than Colorado. Therefore, Michigan law applies and governs this dispute.

As an aside, the Court notes that although Kärcher relies on this dispute's significant contacts with Michigan, it does not say whether venue would be more appropriate in Michigan.

## II.    Examination of Michigan Law

In his FAC, Mr. Miller does not raise a claim based on Michigan law. However, both parties implicate potentially relevant aspects of Michigan law in their briefings of the instant motion. Kärcher argues that Mr. Miller's claim is substantively one for violating Michigan's Whistleblower Protection Act ("WPA"). ECF 22 at 5. Mr. Miller counters that even if Michigan law applies, this controversy is not covered by the WPA, and the Court should rule under the Michigan public policy exception instead. ECF 23 at 5–7. The Court examines both arguments but does not rule on their merits. There is no need to determine whether Mr. Miller pleads a plausible violation of Michigan law, because his only asserted claim is under Colorado law.

### A.  Michigan Whistleblower Protection Act

Michigan's WPA protects an employee from termination if the employee "reports or is about to report a violation or a suspected violation of a law or regulation or rule" of the United States, the State of Michigan, or a department of Michigan. Whistleblowers' Protection Act, Michigan Compiled Laws Annotated § 15.362. Kärcher argues that Mr. Miller's wrongful termination claim falls under the Michigan WPA because he was about to report the bid-rigging request to the DOJ. ECF 22 at 5. Mr. Miller, however, claims that WPA protection does not cover this dispute, because he did not intend to report Kärcher. ECF 23 at 6. Despite this disagreement, the Court does not analyze further whether the WPA applies in this dispute, because Mr. Miller does not raise such a claim in his FAC.

11

### B.  Michigan's Public Policy Tort

Mr. Miller's asserts the tort of wrongful termination against public policy under Colorado law. ECF 21 at 9. However, in light of the Court's finding that Michigan law governs this controversy, Michigan also has a tort cause of action for wrongful termination against public policy that corresponds to Colorado's. Under Michigan law, either party to an employment contract for an indefinite term can generally terminate it at any time and for any reason. *Suchodolski v. Michigan Consolidated Gas Co.*, 316 N.W.2d 710, 711 (Mich. 1982). There are exceptions to this rule if the employee is discharged:

(1) in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty,
(2) for failure or refusal to violate the law in the course of employment, or
(3) for exercising a right conferred by a well-established legislative enactment.

*Id.* Mr. Miller's claim that he was terminated for refusing to participate in an illegal order from his supervisor implicates the second exception. The Michigan Supreme Court specifies that, to satisfy that exception, an employee must demonstrate that his employer has violated a "clearly mandated public policy" to successfully bring a claim of retaliatory discharge. *Suchodolski*, 316 N.W.2d at 712. Michigan's Court of Appeals defined "public policy" as "public policies that . . . have been adopted by the public through various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law." *Landin v. Healthsource Saginaw, Inc.* 854 N.W.2d 152, 159 (Mich. Ct. App. 2014). The Court further noted that "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from the general considerations of supposed public interests." *Id.* At 160.

Although the Court notes Michigan's version of the tort, it need not analyze whether Mr. Miller adequately pleads it, or states the kind of public policy violation contemplated, because he does not raise the Michigan tort as a claim in his FAC.

## III.   Jurisdiction

Under 28 U.S.C. § 1332, federal courts have diversity jurisdiction when the parties are citizens of different states and the amount in controversy exceeds $75,000. The first requirement is satisfied given that Mr. Miller is domiciled in Michigan and Kärcher's principal place of business is in Colorado, where it is headquartered. However, Mr. Miller did not satisfy the second requirement because he did not quantify the damages that he seeks in the FAC. When he files his Second Amended Complaint, as the Court directs below, he shall plead the full basis for his assertion of diversity jurisdiction.

## IV.   Leave to Amend

Dismissal of a case is a harsh remedy, and as a general rule, a litigant should have the opportunity to amend the complaint and cure pleading defects. *Hall v. Bellmon*, 935 F.2d 1106, 1109–10 (10th Cir. 1991); *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The Court does not find that filing a Second Amended Complaint would be futile. This is the first ruling on the merits of Defendant's dismissal arguments, and there is the potential that Plaintiff can correct for the pleading deficiencies discussed above.

## **CONCLUSION**

The parties' confidentiality agreement does not address choice of law. Under the facts of the case, Michigan law governs the dispute. Mr. Miller raises no cause of action under Michigan law, but the Court believes it is likely he can, and for that reason gives him leave to amend.

Accordingly, the Defendant Kärcher's Motion to Dismiss [filed October 4, 2021; ECF 22] is **granted**. This dismissal is without prejudice to amending his complaint to plead federal subject matter jurisdiction and to raise a claim under Michigan law.

Dated at Denver, Colorado, this 15th day of February, 2022.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

14